UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES ALEXANDER LOGAN,

        Plaintiff,

vs.                      Case No. 3:13-cv-532-J-39MCR

STEPHEN JOHNSON, etc.; et al.,

        Defendants.

_____

**ORDER**

## I. Status

On May 9, 2013 (pursuant to the mailbox rule), Plaintiff James Alexander Logan, an inmate confined in the Florida Department of Corrections (FDOC), instituted this action by filing a civil rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding on an Amended Complaint (Amended Complaint) (Doc. 22).[1] Plaintiff filed a Memorandum of Law in Support (Doc. 23) with exhibits.[2] This cause is before the Court on Defendants' [S. Johnson, A. Johnson, B. Starling, D. West, and J. Palmer] Motion to

---

[1] Plaintiff is proceeding pro se. The Court advised Plaintiff of the provisions of Fed. R. Civ. P. 56, notified him that the granting of a motion to dismiss may represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See the Court's Order (Doc. 53). Plaintiff filed a Notice (Doc. 54), stating that he wished to rely on his previously filed responses (Docs. 50 & 51). The Court granted his request and deemed the responses to be timely filed. Order (Doc. 61).

[2] The Court hereinafter refers to the exhibits as "Ex." In this opinion, the Court will reference the page numbers assigned by the electronic filing system.

Dismiss (Defendants' Motion to Dismiss) (Doc. 48) and Defendant J. Slominski's Motion to Dismiss (Slominski's Motion to Dismiss) (Doc. 49).  Plaintiff responded to both motions.  <u>See</u> Plaintiff's Response in Opposition to Deny Defendants' Motion to Dismiss (Response) (Doc. 50) and Plaintiff's Response in Opposition to Defendant Slominski's Pro Se Motion to Dismiss (Doc. 51).

In their motions to dismiss, Defendants assert that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff opposes these motions and seeks the appointment of counsel.

## II.  The Amended Complaint

In the Amended Complaint, Plaintiff names numerous Defendants. The Court, however, will address only the claims raised against Defendants S. Johnson, A. Johnson, B. Starling, D. West, J. Palmer, and J. Slominski.  The Court notes that all Defendants are named in their individual capacities.  Amended Complaint at 1.

Although not a model of clarity, Plaintiff apparently raises the following claims against these particular Defendants: (1) Count One - all Defendants violated Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights;[3] (2) Count Two - an Eighth Amendment excessive force claim against Defendant S. Johnson; (3) Count Three - an Eighth Amendment excessive force claim against Defendant A.

---

[3] In Count One, Plaintiff also raises state and federal tort claims of assault and battery against all Defendants.

Johnson; (4) Count Four - an Eighth Amendment excessive force claim against Defendant Starling; (5) Count Five - a state law tort claim of assault and battery against Defendants S. Johnson, A. Johnson, and Starling; (6) Count Six - a conspiracy claim against Defendants S. Johnson and A. Johnson for conspiring to cover-up the use of excessive force by falsifying disciplinary reports; (7) Count Seven - an Eighth Amendment excessive force/failure to intervene claim against Defendant D. West; (8) Count Eight - a state law tort claim of assault and battery against Defendant West; (9) Count Nine - a conspiracy claim against Defendants West and Benjamin Rowe for conspiring to cover-up the excessive use of force by falsifying disciplinary reports; (10) Count Ten - an Eighth Amendment failure to protect claim against Defendant Palmer; (11) Count Eleven - a state law tort claim of assault and battery against Defendant Palmer for failure to protect Plaintiff from excessive force; (12) Count Twelve - an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Slominski; (13) Count Thirteen - a Fourteenth Amendment equal protection claim against all Defendants; and (14) a federal claim of assault and battery under 18 U.S.C. § 242[4] for depriving Plaintiff of his constitutional rights under the Eighth Amendment (deliberate

---

[4] This section prescribes criminal penalties for deprivations under color of law, including excessive force, which can be a basis of conviction under this section.  Apparently Plaintiff is seeking criminal sanctions for a deprivation of his rights under color of law.

indifference to Plaintiff's health and safety), as secured by the Fifth and Fourteenth Amendments (equal protection of law).

In the Amended Complaint, Plaintiff alleges the following.  He is an inmate confined at Florida State Prison (FSP).  On February 26, 2013, at FSP, Defendant West approached Plaintiff's cell, C-1115, and Plaintiff showed him a grievance response from Central Office concerning security staff.  Amended Complaint at 7. Plaintiff was not kicking his door, making noise or yelling out of his cell window or under his door.  Id. at 8.  The inmate in cell C-1120 was kicking his door, reflected by the movement of the lock on that door.  Id.  Defendant A. Johnson asked if Plaintiff was kicking his door.  Id.  Plaintiff responded in the negative.  Id. Defendant West chemically sprayed Plaintiff in retaliation for Plaintiff's Judicial Notice (Notice, Doc. 159, Case No. 3:07-cv-1156-J-JBT).[5]  Id. at 8, 13.

After being seen by medical staff, Defendant A. Johnson escorted Plaintiff to the medical department for an electrocardiogram (EKG).  Id. at 13.  Defendants West and A.

_____

[5] The Court takes judicial notice of Logan v. Smith, et al., Case No. 3:07-cv-1156-J-JBT.  The Court granted Plaintiff's Judicial Notice (Doc. 159) only to the extent that the Clerk was directed to send a copy of the notice (in which Plaintiff asserted that he had been denied meals, subjected to retaliatory acts, and that his life was in danger) to the Inspector General for whatever action may be deemed appropriate.  (Order, Doc. 160, Case No. 3:07-cv-1156-J-JBT).

Johnson spoke to each other and said "we[']re to make it look good" because he [Plaintiff] "has a good pen."   Id.

Defendant A. Johnson asked Plaintiff why he wrote a grievance against Defendant A. Johnson's brother, Defendant S. Johnson, in 2010.   Id.   Plaintiff responded that Defendant S. Johnson assaulted him in his cell on B wing.   Id.   Defendant A. Johnson told Plaintiff that his brother was still mad about that situation.   Id.

Defendant Nurse Slominski passed out medication on C wing. Id.   Defendant A. Johnson put Plaintiff in the shower area.   Id. Defendant S. Johnson removed Plaintiff from the shower area.   Id. Defendants A. Johnson, S. Johnson, and Rowe escorted Plaintiff downstairs.   Id. at 13-14.

Defendants A. Johnson and S. Johnson entered Plaintiff's cell. Id. at 14.   Defendant S. Johnson directed Plaintiff to kneel on his bunk so that shackles could be removed.   Id.   Plaintiff knelt on the bunk.   Id.   Defendant S. Johnson removed the leg shackles, took the lock off of the chain, and removed the black box from Plaintiff's handcuffs.   Id.   Defendant S. Johnson ordered Plaintiff to stand up and face the wall.   Id.   Plaintiff complied.   Id.

Defendant S. Johnson told Plaintiff that he was going to teach Plaintiff about writing grievances against him because the grievances caused S. Johnson's removal from his B wing assignment in 2010.   Id.   Defendant S. Johnson removed Plaintiff's right handcuff, and Plaintiff placed his hand on top of his head as

ordered by Defendant S. Johnson. Id. Defendant S. Johnson attacked Plaintiff by punching him in the face near the jaw, knocking Plaintiff to the floor. Id. At this point, Defendants A. Johnson and S. Johnson handcuffed Plaintiff behind his back and shackled him. Id. They both started beating Plaintiff, kicking Plaintiff in the face and punching him in the face and head. Id. Defendant A. Johnson hit Plaintiff in the face with his walk-talkie radio. Id. He also struck Plaintiff on the top of his head with the radio. Id. The beating lasted approximately five to seven minutes. Id. The Defendants knocked Plaintiff unconscious. Id. Plaintiff woke up when he received a blow to his head and heard inmates knocking on their doors and saying stop beating the inmate in that cell. Id. Defendant A. Johnson said they are coming so I will call it in. Id.

When Plaintiff arrived at the FSP emergency room, his face and head were swollen and busted open. Id. at 15. Inspector General Smith arrived and took pictures of Plaintiff's face, mouth and head. Id. Moments later, Inspector Snow also took pictures of Plaintiff's face. Id. Plaintiff received stitches to the top of his head where he was hit the radio. Id. Plaintiff received stitches above his eyes and under his chin. Id. In the dental department, Plaintiff received stitches to the inside of his mouth. Id. Inspector Snow took more picture of Plaintiff's face and head. Id. The doctor placed Plaintiff under twenty-four hours

observation due to the severe swelling of Plaintiff's head and face. Id. Later on that same day, the Inspector General took more pictures of Plaintiff's head and face. Id.

Plaintiff notified Defendant Warden Palmer through grievances and a federal court case (Case No. 3:07-cv-1156-J-JBT) that Plaintiff feared retaliation and his life was in danger. Id. at 16. Defendant West conspired with low ranking officers to have Plaintiff chemically sprayed and beaten off camera after Plaintiff showed West a grievance response. Id. After the spraying, the nurse informed Defendant West that Plaintiff should be taken to medical for an examination which should be videotaped on a hand-held camera. Id. Staff escorted Plaintiff back to his cell and the videotaping ended. Id. At that point, Defendants A. Johnson and S. Johnson removed Plaintiff from his cell. Id. Other officers assisted Defendants A. Johnson and S. Johnson in beating Plaintiff on February 26, 2013. Id. at 17. Defendant West failed to intervene during the course of the beating. Id.

All nurses falsified documents stating that Plaintiff was not complaining of any discomfort due to the head and face injuries. Id. at 18. Plaintiff suffered a concussion, blackouts, headaches, and dizziness. Id. The medical staff at FSP failed to send Plaintiff for x-rays and a ct scan on February 26, 2013, when he was under twenty-four hours of doctor's ordered observation. Id. Plaintiff finally received an x-ray on March 21, 2013. Id.

Plaintiff seeks federal and state indictments. Amended Complaint at 16, 23. Plaintiff alleges there was a conspiracy to commit assault and battery. Id. at 17. See Fla. Stat. § 944.35 (battery upon an inmate by an employee of the FDOC). He seeks compensatory and punitive damages and declaratory and injunctive relief. Amended Complaint at 20-23. Finally, Plaintiff seeks the appointment of counsel. Id. at 23.

### III.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

### IV.  Equal Protection

Defendants move to dismiss the equal protection claim. Defendants' Motion to Dismiss at 8-9; Slominski's Motion to Dismiss

8

at 4-5.  Upon review of the Amended Complaint, Plaintiff has not adequately alleged an equal protection violation.

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Due Process Clause of the Fourteenth Amendment states:  "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV, § 1.  "To plead an equal protection claim, a plaintiff must allege that 'through state action, similarly situated persons have been treated disparately.' Thigpen v. Bibb County, Ga., Sheriff's Dep't, 223 F.3d 1231, 1237 (11th Cir.2000), abrogated on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)."  Thorne v. Chairperson Fla. Parole Comm'n, No. 10-15246, 2011 WL 2015249, at *5 (11th Cir. May 24, 2011) (per curiam) (not selected for publication in Federal Reporter).

Specifically, to establish a claim under the Equal Protection Clause, a prisoner such as Plaintiff, can allege that "'(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race.' Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir.2001) (quotation omitted) (hereinafter Ray)."  Smith v. Reg'l Dir. of Fla. Dep't of Corr.,

9

368 F. App'x 9, 12 (11th Cir. 2010) (per curiam).  Plaintiff has

not offered any support for a claim of an equal protection

violation under the Fourteenth Amendment, either by alleging facts

in support of such a claim, or by submitting evidence of an equal

protection violation.  At best, Plaintiff has offered nothing more

than a vague and conclusory allegation that officials deprived him

of his rights under the Equal Protection Clause of the Fourteenth

Amendment.  Accordingly, the motions to dismiss will be granted and

the equal protection claim raised against these Defendants will be

dismissed.

### V.  Conspiracy (Johnson, Johnson & West)

Plaintiff claims that Defendants S. Johnson, A. Johnson, and

West entered into a conspiracy to cover up the fact that Plaintiff

was beaten by correctional officers by falsifying disciplinary

reports.  Plaintiff complains that the falsification of documents

constituted a violation of the First, Fifth, and Eighth Amendments.

Amended Complaint at 9-10.

The Eleventh Circuit described a civil rights conspiracy claim

under 42 U.S.C. § 1983 as follows:

> A plaintiff may state a § 1983 claim for
> conspiracy to violate constitutional rights by
> showing a conspiracy existed that resulted in
> the actual denial of some underlying
> constitutional right.  GJR Invs., Inc. v.
> County of Escambia, 132 F.3d 1359, 1370 (11th
> Cir. 1998). "The plaintiff attempting to prove
> such a conspiracy must show that the parties
> 'reached an understanding' to deny the
> plaintiff his or her rights. The

10

conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted). A plaintiff claiming a § 1983 conspiracy must prove the defendants "reached an understanding" to violate the plaintiff's constitutional rights. Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement."). Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence. Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 789 (11th Cir. 1992).

Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010).

Defendants assert that Plaintiff's conspiracy claim must fail because of the intracorporate conspiracy doctrine. Defendants' Motion to Dismiss at 10-11. These Defendants were employees of the FDOC at the time of the events in question, and all of the allegations arise out of their duties as employees of the FDOC.

Initially, in order to establish a § 1853(3) conspiracy claim, Plaintiff has to show two or more persons entered an agreement to deprive him of his civil rights. 42 U.S.C. § 1853(3). Here, Plaintiff claims that these FDOC's employees conspired to deprive him of his constitutional rights. Indeed, the employees of the FDOC "constitute a single legal entity that cannot conspire with itself." Dickerson v. Alachua Cnty. Comm'n., 200 F.3d 761, 768 (11th Cir.), cert. dismissed, 530 U.S. 1285 (2000).

11

Of import, the intracorporate conspiracy doctrine "has been applied not only to private corporations but also to public, government entities." Hollins v. Fulton Cnty., 422 F. App'x 828, 833 (11th Cir.) (per curiam) (quoting Dickerson, 200 F.3d at 767), cert. denied, 132 S.Ct. 586 (2011).  Of note, the doctrine provides "that employees of a public, governmental entity or a private corporation, when acting as agents of the entity or corporation, 'are deemed incapable of conspiring among themselves or with the corporation.'" McLemore v. Cruz, No. 6:10-cv-766-Orl-28KRS, 2011 WL 4101729, at *4 (M.D. Fla. Sept. 14, 2011) (quoting Dickerson, 200 F.3d at 767) (a case claiming co-conspirators, correctional officers at the Orange County Jail, created a "fight-club" at the jail staging inmate fights).  See Myers v. Fla., No. 5:12-cv-259-RS-EMT, 2014 WL 68067, at *10 (N.D. Fla. Jan. 8, 2014) (finding that when all of the alleged conspirators were employees of the FDOC and no outsiders were involved in the alleged conspiracy, the intracorporate conspiracy doctrine is applicable to the action).

In the instant case, Defendants A. Johnson, S. Johnson, and West are correctional officers, and they were conducting their duties on the wing, including maintaining order and security on the wing, restraining Plaintiff, and escorting him to medical and to his cell.  In this instance, Defendants were undoubtedly performing job-related duties.

In Grider, 618 F.3d at 1261, the Eleventh Circuit noted:

> We recognize that one might reasonably believe that violating someone's constitutional rights is never a job-related function or within the scope of a [correctional] officer's employment. However, the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally. The scope-of-employment inquiry is whether the employee [correctional] officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business.

Here, the job-related functions of the correctional employees were "well within Defendants' scope of employment as FDOC employees." Claudio v. Crews, No. 5:13-cv-345-MP-EMT, 2014 WL 1758106, at *6 (N.D. Fla. May 1, 2014).

At first blush it appears that the intracorporate conspiracy doctrine may bar Defendants from being held liable for conspiring to deprive Plaintiff of his constitutional rights. Since all of the Defendants were FDOC's employees at the time of the incident, "[t]he 'conspiracy' occurred only within a government entity[.]" Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010), aff'd by 132 S.Ct. 1497 (2012). However, in this instance, Plaintiff specifically alleges criminal conduct. Thus, this case may present an exception to the intracorporate conspiracy doctrine. Dickerson, 200 F.3d at 770 (noting that there may be an exception to the doctrine but not reaching the issue under the particular circumstances of that case).

13

Of import, the Eleventh Circuit recognizes that the doctrine is limited; indeed, "[t]he fiction was never intended to prohibit the imposition of criminal liability by allowing a corporation or its agents to hide behind the identity of the other." United States v. Hartley, 678 F.2d 961, 970 (11th Cir. 1982) (abrogated on other grounds), cert. denied, 459 U.S. 1170 (1983).  Moreover, it has been recognized that it is possible for a corporation to conspire with its own officers. Id. at 972.

Plaintiff alleges that the conduct of the Defendants, as described in his Amended Complaint, "could give rise to criminal charges" against the FDOC employees. See Dickerson, 200 F.3d at 770.  More specifically, he claims that Defendants committed a battery pursuant to Fla. Stat. § 944.35.  This statute provides that "[a]ny employee of the department [of corrections] who, with malicious intent, commits a battery upon an inmate . . . commits a misdemeanor of the first degree[.]" Fla. Stat. § 944.35(3)(a)1.  It also provides that "[a]ny employee of the department [of corrections] who, with malicious intent, commits a battery or inflicts cruel or inhuman treatment by neglect or otherwise, and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to an inmate . . . commits a felony of the third degree[.]" Fla. Stat. § 944.35(3)(a)2. See Amended Complaint at 17.  Additionally, Plaintiff alleges that Defendants violated a federal statute, 18 U.S.C. § 242, entitled deprivation of rights

14

under color of law, which provides for criminal sanctions for deprivation of constitutional rights under color of law. Id. at 12. Finally, Plaintiff presents documents in support of his allegations. One of these documents, an April 9, 2013 response to Plaintiff's request for an administrative remedy, reflects that the Warden or his representative informed Plaintiff that "Inspector Smith advises that this is an open criminal case[.]" Ex. A-7 at 27.

Plaintiff has stated a claim of conspiracy with facial plausibility. The Court is not convinced, at this stage of the proceedings, that the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim as alleged in the Amended Complaint. Therefore, Defendants' Motion to Dismiss is due to be denied.

In the alternative, Defendants assert that the allegations supporting Plaintiff's claim of a conspiracy are vague and conclusory. Defendants' Motion to Dismiss at 9-10. Based on all of the above and upon consideration of the allegations raised in the Amended Complaint, the Court concludes that the Amended Complaint states a conspiracy claim that is plausible on its face and the claim should not be dismissed as vague and conclusory.

## VI.  Criminal Prosecution

To the extent that Plaintiff is attempting to institute a federal or state criminal proceeding against the Defendants through his Amended Complaint, that request for relief is due to be dismissed. See Defendants' Motion to Dismiss at 11. It is well-

15

settled that whether to prosecute and what criminal charges to file are decisions that generally rest in the prosecutor's, not the Court's discretion. See United States v. Batchelder, 442 U.S. 114, 124-25 (1979); Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 379-80 (2d Cir. 1973); Stoll v. Martin, No. 3:06CV180/LAC/EMT, 2006 WL 2024387, at *3 (N.D. Fla. 2006) (not reported in F.Supp.2d) (finding no citizen has a right to institute a criminal prosecution, nor can the court direct that a criminal prosecution occur).

Absent a statute expressly conferring standing, "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another." Otero v. United States Attorney General, 832 F.2d 141, 141 (11th Cir. 1997) (per curiam) (citation omitted).  Such matters are discretionary public duties and "may not be controlled by a writ of mandamus." Id. at 141-42 (citation omitted). See Weaver v. Mateer and Harbert, P.A., 523 F. App'x 565, 568 (11th Cir. 2013) (per curiam) (denying a motion to refer a party's conduct to the United States Attorney, finding that the Eleventh Circuit has previously held that a private citizen has no judicially cognizable interest in such a prosecution).

### VII.  Excessive Force (Starling)

Defendant Starling asserts that Plaintiff has failed to adequately allege a claim of excessive force against him. Defendants' Motion to Dismiss at 11.  Upon review of the Amended

Complaint, Plaintiff has adequately presented an Eighth Amendment excessive force claim against Defendant Starling. Plaintiff states that he was subjected to a brutal beating by Defendants A. Johnson, S. Johnson, and Brian Starling, as well as other officers, "off view of cameras" on February 26, 2013. Amended Complaint at 17.

### VIII. Assault and Battery (Starling & Palmer)

Defendants contend that Plaintiff has failed to adequately allege a claim of assault and battery with respect to Defendants Starling and Palmer. Defendants' Motion to Dismiss at 11-12. The Court agrees that Plaintiff has failed to adequately allege a state law claim of assault and battery against Defendant Palmer. Defendants' Motion to Dismiss will be granted with respect to the claim of assault and battery against Defendant Palmer.

Plaintiff alleges that Defendant Starling committed an assault and battery by participating in the beating inside of Plaintiff's cell on February 26, 2013. Amended Complaint at 9, 17. The Court concludes that the Amended Complaint states a claim of assault and battery against Defendant Starling that is plausible on its face. Thus, Defendants' Motion to Dismiss will be denied in this respect.

### IX. Failure to Protect (Palmer)

Defendants contend that Plaintiff has failed to adequately allege a failure to protect claim against Defendant Palmer. Defendants' Motion to Dismiss at 12-13. Defendant Palmer contends that Plaintiff is seeking to invoke the doctrine of respondeat

17

superior.  Id. at 12-13.  Defendant Palmer states that Plaintiff does not adequately allege that Defendant Palmer's had knowledge of a substantial risk of harm presented by Defendants West, A. Johnson, and S. Johnson.  Id. at 13.

In the Amended Complaint, Plaintiff alleges that Defendant Palmer was aware of the danger to Plaintiff's health and safety because Plaintiff had repeatedly raised the issue that officers were retaliating against him by submitting complaints through the administrative grievance process and by prosecuting a civil rights action, Case No. 3:07-cv-1156-J-JBT (Docs. 142, 145, 159-60).  See Amended Complaint at 16.  Upon review, however, the defendants named in Case No. 3:07-cv-1156-J-JBT do not include the officers Plaintiff alleges beat him on February 26, 2013.  Of note, in Case No. 3:07-cv-1156-J-JBT, Plaintiff repeatedly filed documents asserting that the defendants in that case and other unnamed officers were retaliating against him for the prosecution of complaints.  See id. (Orders, Docs. 142 & 145).  The Court directed that its July 30, 2012 Order (Doc. 142) be provided to the Warden of FSP for whatever action may be deemed appropriate in light of Plaintiff's allegations that unnamed prison officials had threatened to kill him in retaliation for his filing and prosecuting his case, and they had threatened to gas him, strip him naked, and falsify disciplinary reports against him.

Plaintiff asks this Court to infer that Defendant Palmer was aware that Plaintiff was in danger because of Plaintiff's numerous grievances and complaints about acts of retaliation taken against him by prison staff. Response at 2-3. The Court has reviewed the exhibits attached to Plaintiff's Memorandum of Law (Doc. 23), and they are all dated after February 26, 2013, not prior to the alleged beating of February 26, 2013. Thus, they will not be considered to be documents constituting notice to Defendant Palmer prior to the alleged beating. The Court has also reviewed the documents Plaintiff references in Case No. 3:07-cv-1156-J-JBT. Again, they concern complaints of retaliation by the named defendants in that case and other unidentified officers.

In addressing a claim of failure to protect against a supervisor, and more particularly in this instance, against a warden of a prison facility, the Court should inquire as to whether the individual had the ability to prevent or stop a constitutional violation and failed to exercise his authority as a supervisor to prevent or stop the constitutional violation. Keating v. City of Miami, 598 F.3d 753, 765 (11th Cir.), cert. dismissed, Timoney v. Keating, 131 S. Ct. 501 (2010) (finding a supervisor may be liable under a theory of supervisory liability if he has the ability to prevent or discontinue a known constitutional violation and then fails to exercise his authority to stop the constitutional violation). Of course, "[e]ven when an officer is not a

participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." <u>Ledlow v. Givens</u>, No. 12-12296, 2012 WL 6176471, at *4 (11th Cir. Dec. 12, 2012) (per curiam) (not selected for publication in the Federal Reporter) (citation omitted), <u>cert</u>. <u>denied</u>, 133 S.Ct 2802 (2013).

Defendant Palmer may not, however, be held liable under a theory of respondeat superior.

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." <u>Belcher v. City of Foley, Ala.</u>, 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." <u>Gonzalez</u>,[6] 325 F.3d at 1234 (internal quotation marks and citation omitted). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990).

<u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008) (abrogated on other grounds); <u>see</u> <u>Braddy v. Fla. Dep't of Labor & Emp't Sec.</u>, 133 F.3d 797, 801 (11th Cir. 1998) (finding supervisory liability requires something more than stating a claim of liability under a theory of respondeat superior).

Plaintiff is required to allege a causal connection between the actions of Defendant Palmer and the alleged constitutional

---

[6] <u>Gonzalez v. Reno</u>, 325 F.3d 1228 (11th Cir. 2003).

deprivation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). A necessary causal connection can be established if: (1) the supervisor knew about and failed to correct a widespread history of abuse; or (2) the supervisor's custom or policy resulted in a constitutional violation; or (3a) the supervisor directed the subordinate to act unlawfully; or (3b) the supervisor knew that the subordinate would act unlawfully and failed to stop him from acting unlawfully. Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). But, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id. at 1360-61 (internal quotation marks omitted and citation omitted).

Plaintiff does not allege Defendant Palmer personally participated in the alleged use of excessive force, nor does Plaintiff contend that Defendant Palmer directed his officers to use force against Plaintiff. Although the Amended Complaint is not a model of clarity, it appears that Plaintiff is not alleging a widespread custom of abuse at FSP in an attempt to impose liability upon Defendant Palmer. Plaintiff does, however, allege that Defendant Palmer knew his officers would act unlawfully and failed to stop them from doing so.

At this juncture, the Court is reluctant to find that Plaintiff has failed to state a claim of failure to protect against

21

Defendant Warden Palmer.   Plaintiff complained that unnamed officers threatened to retaliate against him, and he feared for his safety from the correctional officers at FSP.   The matters raised in Defendants' Motion to Dismiss with respect to this claim would more properly be raised in a Rule 56 motion with supporting records, affidavits, and other relevant documents.   Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.

When Defendants file their motion for summary judgment, they are directed to state with particularity the supporting evidentiary basis for granting summary disposition of this case.   The Court need not scour the record for evidentiary materials on file; instead, the Court need ensure that the allegedly dispositive motion itself is supported by the appropriate evidentiary materials. <u>Reese v. Herbert</u>, 527 F.3d 1253, 1269 (11th Cir. 2008) (citing <u>One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.</u>, 363 F.3d 1099, 1101-02 (11th Cir. 2004)).   And, in response, Plaintiff is expected to attach as exhibits the specific documents which may show that Defendant Palmer was aware of the threat to Plaintiff's health and safety, including grievances, affidavits, and other materials.   Plaintiff should not generally refer to all of his grievances and prior cases to support his position.   This shotgun approach will not be favorably received at the summary judgment stage of this proceeding.

## X.   Eighth Amendment (Slominski)

Defendant Nurse Slominski, proceeding pro se, asserts that Plaintiff failed to adequately allege an Eighth Amendment claim of cruel and unusual punishment against her.  Plaintiff alleges that Defendant Slominski was deliberately indifferent to his serious medical needs.  Amended Complaint at 12.  He contends that the nurses knew that he was experiencing blackouts and dizziness during the twenty-four hour observation period after the beating, and they failed to respond to his complaints of discomfort and falsified documents by failing to report his symptoms.  Id. at 18.  Plaintiff also alleges that this failure to treat and report his symptoms resulted in the medical staff's failure to immediately send him for x-rays and a ct scan.  Id.  The Court concludes that the Amended Complaint states a Eighth Amendment claim of deliberate indifference to a serious medical need against Defendant Slominski that is plausible on its face.  Thus, Defendant Slominski's Motion to Dismiss will be denied in this respect.

## XI.   Appointment of Counsel

Finally, Defendants contend that Plaintiff is not entitled to appointment of counsel as he has shown that he is capable of adequately investigating and presenting his case, there are no exceptional circumstances to warrant the appointment of counsel, the facts are simple and the issues of law settled, and Plaintiff is an experienced litigant.  Defendants' Motion to Dismiss at 13-

23

15.  Because it appears Plaintiff is able to prosecute this case during this early stage of the litigation, Plaintiff's request for the appointment of counsel is premature.  However, after the case progresses, Plaintiff may file a motion for appointment of counsel for the Court's consideration.

Therefore, it is now

**ORDERED:**

1.  Defendants' Motion to Dismiss (Doc. 48) and Defendant Slominski's Motion to Dismiss (Doc. 49) are **GRANTED** with respect to the equal protection claim, and the equal protection claim is dismissed from this action.  In all other respects, Defendant Slominski's Motion to Dismiss (Doc. 49) is **DENIED**.

2.  Defendants' Motion to Dismiss (Doc. 48) is **DENIED** with respect to the conspiracy claim against Defendants S. Johnson, A. Johnson, and West; the excessive force claim against Defendant Starling; the assault and battery claim against Defendant Starling; and the failure to protect claim against Defendant Palmer.

3.  Defendants' Motion to Dismiss (Doc. 48) is **GRANTED** with respect to Plaintiff's attempt to institute a federal or state criminal proceeding against the Defendants through his Amended Complaint, and that claim is dismissed from this action. Defendants' Motion to Dismiss (Doc. 48) is also **GRANTED** with respect to the assault and battery claim against Defendant Palmer, and that claim is dismissed from this action.

24

4.    Defendants shall respond to the remaining claims of the Amended Complaint by **November 26, 2014.**

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of October, 2014.


_____
BRIAN J. DAVIS
United States District Judge


sa 10/27
c:
Counsel of Record

25