```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                JACKSONVILLE DIVISION
```

JAMES ALEXANDER LOGAN,

        Plaintiff,

vs.                                    Case No. 3:13-cv-532-J-39MCR

STEPHEN JOHNSON, etc.; et al.,

        Defendants.

_____

## **ORDER**

### I. Status

Plaintiff James Alexander Logan, an inmate confined in the Florida Department of Corrections (FDOC), is proceeding on an Amended Complaint (Amended Complaint) (Doc. 22) pursuant to 42 U.S.C. § 1983. He filed a Memorandum of Law in Support (Memorandum) (Doc. 23) with exhibits.[1] The Motion to Dismiss by Defendants' Espino, Hercule, Lagman, Whitehead, and Williams (Defendants' Motion to Dismiss) (Doc. 88) is pending before the Court. Plaintiff responded.[2] See Plaintiff's Request that

---

[1] The Court hereinafter refers to the exhibits as "Ex." In this opinion, the Court will reference the page numbers assigned by the electronic filing system.

[2] The Court advised Plaintiff of the provisions of Fed. R. Civ. P. 56, notified him that the granting of a motion to dismiss may represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond. (Doc. 53).

Defendants' [Motion to Dismiss] be Granted in Part and Denied in Part (Response) (Doc. 95).

In his Response, Plaintiff concedes that the Defendants' Motion to Dismiss should be granted as to his equal protection claim against the Defendants, his assault and battery claim against Defendants Whitehead and Williams, and his claim seeking criminal indictments. Response at 1. In light of this concession by Plaintiff, the Court will grant Defendants' Motion to Dismiss with respect to these claims.

In their Motion to Dismiss, Defendants assert that Plaintiff has failed to state a claim upon which relief can be granted with respect to the claim of failure to protect against Defendants Whitehead and Williams and the claim for medical deliberate indifference against Defendants Espino, Hercule, and Lagman. Defendants' Motion to Dismiss at 1. Defendants also claim they are entitled to qualified immunity. Id. Plaintiff opposes Defendants' motion with respect to these claims. Response at 1-3.

## II. The Amended Complaint

In the Amended Complaint, Plaintiff names numerous Defendants. The Court, however, will address only the claims raised against Defendants Espino, Hercule, Lagman, Whitehead, and Williams. The Defendants are named in their individual capacities. Amended Complaint at 1. A summary of the allegations raised in the Amended Complaint is presented in the Court's Order (Doc. 72) and will not

2

be repeated herein.³  Plaintiff seeks compensatory and punitive damages and declaratory and injunctive relief.  Amended Complaint at 21-23.

### III.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

---

³ The Court takes judicial notice of Logan v. Smith, et al., Case No. 3:07-cv-1156-J-JBT.  In that case, the Court granted Plaintiff's Judicial Notice (Doc. 159) only to the extent that the Clerk was directed to send a copy of the order and notice (in which Plaintiff asserted that he had been denied meals, subjected to retaliatory acts, and that his life was in danger) to the Inspector General for whatever action may be deemed appropriate.  (Order, Doc. 160, Case No. 3:07-cv-1156-J-JBT).

### IV. Failure to Protect (Whitehead and Williams)

Defendants contend that Plaintiff has failed to adequately allege a failure to protect claim against Defendants Whitehead and Williams. Defendants' Motion to Dismiss at 14-15. First, the Court notes that none of the documents referenced by Plaintiff were addressed to Defendants Whitehead and Williams. Id. at 15. Also, upon further review of the documents submitted by Plaintiff, the grievances about safety and security issues are not directed to these Defendants and none of the responses with regard to safety and security issues are written by these Defendants. Id. The Court will not assume that Defendants Whitehead and Williams were placed on notice of any potential danger from Defendants S. Johnson, A. Johnson, or West by Plaintiff's grievances submitted to other officials of the Florida Department of Corrections. In sum, Plaintiff's vague and conclusory allegation that these Defendants were aware of the danger to Plaintiff's life and safety will not support a constitutional claim under 42 U.S.C. § 1983.

To the extent Plaintiff is claiming that Defendants Whitehead and Williams were aware of the danger to Plaintiff's health and safety because Plaintiff repeatedly raised the issue that officers were retaliating against him by submitting complaints through the administrative grievance process and by prosecuting a civil rights action, Case No. 3:07-cv-1156-J-JBT (Docs. 142, 145, 159-60), he still fails to state how the Defendants were aware of any danger

from Defendants S. Johnson, A. Johnson, and West because the defendants named in Case No. 3:07-cv-1156-J-JBT do not include the officers Plaintiff alleges beat and assaulted him on February 26, 2013. Of note, in Case No. 3:07-cv-1156-J-JBT, Plaintiff repeatedly filed documents asserting that the defendants in that case and other unnamed officers were retaliating against him for the prosecution of complaints. See id. (Orders, Docs. 142 & 145). The Court directed that its July 30, 2012 Order (Doc. 142) be provided to the Warden of Florida State Prison (FSP), not the assistant warden or a colonel, for whatever action may be deemed appropriate in light of Plaintiff's allegations that unnamed prison officials had threatened to kill him in retaliation for his filing and prosecuting his case, and they had threatened to gas him, strip him naked, and falsify disciplinary reports against him.

To the extent Plaintiff asks this Court to infer that Defendants Whitehead and Williams were aware that Plaintiff was in danger because of Plaintiff's numerous grievances and complaints about acts of retaliation taken against him by prison staff, the Court has reviewed the exhibits attached to Plaintiff's Memorandum of Law (Doc. 23), and none of these documents would constitute actual notice to Defendants Whitehead and Williams prior to the alleged beating.[4] The Court has also reviewed the documents

---

[4] Plaintiff specifically references Exhibit A-6 attached to his Memorandum (Doc. 23). This document, a Central Office Grievance Log from the Inspector General's Office, written by

5

Plaintiff references in Case No. 3:07-cv-1156-J-JBT. Again, they concern complaints of retaliation by the named defendants in that case and other unidentified officers.

Of significance, the Court denied Defendant Warden Palmer's Motion to Dismiss with respect to Plaintiff's claim of failure to protect because Plaintiff alleged that Warden Palmer knew his officers would act unlawfully and failed to stop them from doing so, and many of Plaintiff's grievances were actually directed to the Warden of FSP, see Order (Doc. 72 at 18, 21-22), and furthermore, the Court directed that its Order (Doc. 142), filed July 30, 2012 in Case No. 3:07-cv-1156-J-JBT, be forwarded to the Warden of FSP. Of import, the Court did not direct that the Order be sent to Defendants Whitehead and Williams. As such, the exhibits show that Plaintiff's grievances concerning his safety and security were not directed to the assistant warden and colonel, and the responses are by other corrections officials. Also, the Court did not direct that the Order in Case No. 3:07-cv-1156-J-JBT be sent to them; instead, the Court directed that the Order be sent to the Warden of FSP.[5]

---

Cliff Neel, denies Plaintiff's appeal concerning a complaint received February 5, 2013, concerning threats by staff at Florida State Prison. Ex. A-6. The disposition date is February 15, 2013, and the mailing date is February 20, 2013. Id. The incident date is blank. Id. The names of the "staff" are not referenced in this document.

[5] The Court notes that the Court directed that some orders in Case No. 3:07-cv-1156 be sent to the Inspector General. See Orders

In addressing a claim of failure to protect against a supervisor, this Court should inquire as to whether the individual had the ability to prevent or stop a constitutional violation and failed to exercise his authority as a supervisor to prevent or stop the constitutional violation. Keating v. City of Miami, 598 F.3d 753, 765 (11th Cir.), cert. dismissed, Timoney v. Keating, 131 S. Ct. 501 (2010) (finding a supervisor may be liable under a theory of supervisory liability if he has the ability to prevent or discontinue a known constitutional violation and then fails to exercise his authority to stop the constitutional violation). Also, it is important to note that "[e]ven when an officer is not a participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citation omitted), cert. denied, 133 S.Ct 2802 (2013).

In order to support his claim of failure to protect, Plaintiff must allege a causal connection between the actions of the Defendants and the alleged constitutional deprivation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). The Eleventh Circuit held that a necessary causal connection can be established if: (1) the supervisor knew about and failed to correct a widespread history of abuse; or (2) the supervisor's custom or policy resulted in a constitutional violation; or (3a) the

---

(Docs. 145 & 160).

supervisor directed the subordinate to act unlawfully; or (3b) the supervisor knew that the subordinate would act unlawfully and failed to stop him from acting unlawfully. Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). However, establishing the necessary causal connection is not an easy task: "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id. at 1360-61 (internal quotation marks omitted and citation omitted).

Conclusory, vague, and general allegations of failure to protect should be dismissed. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (recognizing that a civil rights complaint containing vague and conclusory allegations will be dismissed as insufficient). Here, Plaintiff failed to allege facts tending to show that these particular prison officials knew that subordinates would act unlawfully and failed to prevent their actions. There is no indication that Defendants Whitehead and Williams foresaw the alleged attack of February 26, 2013, or failed to stop subordinates from acting unlawfully. Plaintiff's various grievances supplied to other prison officials about his risk for an attack, without more, did not put these particular Defendants on notice, neither did the Order (Doc. 142) in Case no. 3:07-cv-1156-J-JBT. With respect to Defendants Whitehead and Williams, Plaintiff has failed to plead "enough facts to state a claim to

relief that is plausible on its face." Twombly, 550 U.S. at 570. Therefore, Defendants' Motion to Dismiss (Doc. 88) is due to be granted with respect to the claim of failure to protect against Defendants Whitehead and Williams.

**V.   Eighth Amendment (Espino, Lagman, and Hercule)**

Plaintiff claims that Defendants Espino, Lagman, and Hercule were deliberately indifferent to his serious medical needs because they refused to send him to an outside medical facility for a CT-scan and an X-ray of his head and face after the February 26, 2013 incident. The Eleventh Circuit addressed the requirements to establish an Eighth Amendment claim with respect to medical care.

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an objectively serious [medical] need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the

9

condition." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  Apparently, Defendants do not dispute that Plaintiff had a serious medical need.  Instead, they assert that, at most, Plaintiff has presented a claim of medical malpractice.  Defendants' Motion to Dismiss at 17.  Indeed, they contend that "*[i]t is well established law* that 'the question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment[,] does not represent cruel and unusual punishment[,] and [a]t most it is medical malpractice.'" Id. (citing Estelle, 429 U.S. at 107 and Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted)).

To satisfy the subjective component, a plaintiff must prove the following:

> "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."
> Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (alteration in original) (internal quotation marks omitted). Although we have occasionally stated, in dicta, that a claim of deliberate indifference requires proof of "more than mere negligence," McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999), our earlier holding in Cottrell, 85 F.3d at 1490[6], made clear that, after Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), a claim of deliberate

---

[6] Cottrell v. Caldwell, 85 F.3d 1480 (11th Cir. 1996).

>    indifference requires proof of more than gross negligence.

Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010). This Court has addressed whether a delay in providing medical care may rise to the level of an Eighth Amendment claim.

>    "The meaning of 'more than gross negligence' is not self-evident but past decisions have developed the concept. In cases that turn on the delay in providing medical care, rather than the type of medical care provided, we have set out some factors to guide our analysis. Where the prisoner has suffered increased physical injury due to the delay, we have consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id.

Fischer v. Fed. Bureau of Prisons, No. 5:06-cv-407-Oc-10GRJ, 2008 WL 4371828, at *5 (M.D. Fla. Sept. 23, 2008).

Here, Plaintiff alleges that he should have been sent to an outside facility to receive CT-scans and X-rays after the incident at FSP.[7] Plaintiff contends that the doctors knew he had a concussion, but refused to send him to outside medical care despite Plaintiff's complaints of blackouts, dizziness, severe headaches, and pain. Of import, Plaintiff submitted exhibits in support of his Amended Complaint.[8] These exhibits include a detailed response

---

[7] Plaintiff admits that he received an X-ray at Union Correctional Institution on March 21, 2013. Response at 3.

[8] This Court, in ruling on a motion to dismiss, may consider the documents filed with a complaint. Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (per

11

from Dr. Espino, the Chief Health Officer of FSP, providing a summary of the medical care Plaintiff received at FSP after the incident. In denying Plaintiff's medical grievance on March 22, 2013, Dr. Espino states:

> Review of your medical records indicates that you were seen, assessed, and treated appropriately. On the said day you allege abuse you were seen by the nursing staff first where your injuries were cleansed and thoroughly documented. While the nurses were taking care of you, it's noted that you were fully aware, alert and oriented to your surroundings. It's further noted that you were verbally appropriate without any disorientation. Your pupils were round, and reactive to light on assessment. No neurological deficits were noted.
>
> You were referred to Dr. Hercule who then sutured your scalp, left temple, left eye brow, and right forehead. Doctor Hercule gave orders to house you in medical, do neurological checks, give motrin, to have you evaluated by dental, and for medical staff to contact on-call physician after hours should any complications occur.
>
> You were taken to see the dentist Dr. Girardeau who sutured your lip, and prescribed antibiotics. All the procedures were tolerated well.
>
> While housed up in medical you remained alert and oriented without any neurological deficits, your vital signs remained stable, and antibiotics were started without any untoward effects.
>
> On 2/27/2013 you had a follow up with Dr. Lagman and his observation and documentation

---

curiam) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). The Court will do so in this instance.

>    was upon palpation of your head a[nd] face there were no bone deformity of the facial bones and not bony depressions at site of lacerations and swelling. Furthermore, you had normal open and closure of your mouth without any TMJ clicks. Your neck was noted to be supple, no deformity, and no neurological deficits upon his evaluation.
>
>    If you have further concerns you have the option of accessing sick call at your discretion or self-declare a medical emergency if you feel you can't wait for sick call. It will remain your current institutional provider who will decide all courses of treatment including X-rays, CT scans, and MRI's. Just because you want something does not mean it's medically justified.

Ex. A-5.

Assuming arguendo an X-ray or CT-scan might have been suitable and many other tests conducted which may have led to an appropriate diagnosis and treatment for Plaintiff's immediate pain and suffering, but that is clearly "a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." Id. As such, at most, Plaintiff has alleged actions that constitute medical malpractice; therefore, he has failed to state a claim of constitutional dimension under 42 U.S.C. § 1983.

In this instance, many steps were taken to treat Plaintiff, including cleansing his wounds; suturing his wounds; housing him in the medical department in order to allow for close observation and assessment of his condition, including closely monitoring his

13

neurological condition; referring him to a dentist; prescribing medication, including antibiotics and pain medication; administering medication; and palpating Plaintiff's head and face for bone deformity and depressions. Ex. A-5. This is certainly not evidence of cursory treatment amounting to no treatment at all. Campbell v. Sikes, 169 F.3d 1353, 1368 (11th Cir. 1999). Instead, the response of the medical staff shows that they not only treated Plaintiff's immediate injuries but also closely monitored his symptoms.

Since "[m]atters of medical judgment extend to whether the defendants should have provided additional forms of treatment[,]" the Court concludes that Plaintiff fails to present a claim of deliberate indifference in violation of the Eighth Amendment of the United States Constitution against these Defendants. Grimsley v. Hammack, 256 F. App'x 271, 273 (11th Cir. 2007) (per curiam) (citations omitted). The choice of whether to order diagnostic tests is certainly a matter of medical judgment. Here, Plaintiff raises an asserted difference of medical opinion in the manner in which medical staff treated Plaintiff's condition at FSP. At most, Plaintiff raises a claim of medical malpractice. Therefore, Defendant's Motion to Dismiss is due to be granted.

### VI. Qualified Immunity

The Defendants maintain that they are entitled to qualified immunity. They contend:

14

> First, as stated <u>supra</u>, Logan had not stated a claim for a constitutional violation. Second, Logan did not show that defendants Whitehead or Williams violated any clearly established law. He has not specifically alleged how they [were] consciously or callously indifferent to potential harm from S. Johnson, A. Johnson, or West. Third, the law is well established that a medical decision to order a CT-scan or an X-ray does not state a claim for medical deliberate indifference.

Defendants' Motion to Dismiss at 20.

With regard to qualified immunity, the Eleventh Circuit explained:

> To receive qualified immunity, [a] public official must establish that he was engaged in a "discretionary function" at the time he committed the allegedly unlawful act. <u>Holloman ex. rel. Holloman v. Harland</u>, 370 F.3d 1252, 1263-64 (11th Cir. 2004) . . . . If the official demonstrates that he was engaged in a discretionary function, the burden shifts to the plaintiff to prove that the official is not entitled to qualified immunity. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1358 (11th Cir. 2003). This requires plaintiff to satisfy the two-part test prescribed by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under <u>Saucier</u>, a plaintiff must first show that the defendant violated a constitutional right and then demonstrate that the constitutional right was clearly established at the time of the alleged wrongful act. 533 U.S. at 201, 121 S.Ct. at 2156. If a court, after viewing all the evidence in the light most favorable to the plaintiff and drawing all inferences in his favor, determines that the plaintiff has satisfied these two requirements, the defendant may not obtain qualified immunity. <u>Holloman</u>, 370 F.3d at 1264.

Bryant v. Jones, 575 F.3d 1281, 1295 (11th Cir. 2009), cert. denied, 559 U.S. 940 (2010).

Notably, the Defendants were engaged in discretionary functions during the events in question. But, this Court has found that Plaintiff has failed to state a claim that the Defendants violated his constitutional rights with regard to both his failure to protect claim and his claim of medical deliberate indifference. The Court finds Defendants Whitehead, Williams, Espino, Lagman, and Hercule are entitled to qualified immunity. Thus, Defendants' Motion to Dismiss is due to be granted in this regard. See Motion to Dismiss at 18-20.

Therefore, it is now

**ORDERED:**

The Motion to Dismiss by Defendants Espino, Hercule, Lagman, Whitehead, and Williams (Doc. 88) is **GRANTED**, and **Defendants Espino, Hercule, Lagman, Whitehead, and Williams** are **DISMISSED** from this action.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of February, 2015.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/12
c:
James Alexander Logan
Counsel of Record